## Taylor v. City of Pineville.

May 8, 1945.

H. L. Bryant for appellants.

W. L. Hammond for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This action was instituted by the City of Pineville, a city of the fourth class, against the administrator and unknown heirs of S. S. Taylor, who died in 1936, for the purpose of collecting delinquent taxes on two pieces of property left by him. Summons was served on the administrator. The taxes had been assessed in the name of S. S. Taylor estate. When the city learned that the only heir of S. S. Taylor was a daughter, Ramona, 15 years of age, who was residing with a relative in Cleveland, Ohio, it filed an amended petition making Ramona Taylor and M. G. Colson, her guardian, parties defendant. Summons was served on the guardian. The warning order attorney and the guardian were present when

depositions were taken for the city and they actively participated in the case. The warning order attorney made the following report:

"For his report as warning order attorney, the undersigned states that immediately upon his appointment herein as such, he wrote a letter to Ramona Taylor at her address in Cleveland, Ohio, where she lived and made her home with her aunt, Lula Taylor Hopkins. The aunt, Mrs. Hopkins, answered the letter requesting me to work out something for the benefit of the infant defendant, Ramona Taylor. Later, Ramona Taylor and her aunt came to Pineville and we went over the situation, in view of this suit, and decided the best way out is to let one piece of the property involved sell to pay the taxes and give the girl some money to keep her in school. Ramona stayed here for several weeks, but was sent somewhere to school.

"I attended the taking of depositions in this case September 25 and 26, 1944, and learned from the witnesses that perhaps the best thing for the infant defendant is to let the lots in Block 33 sell, as testified by Ida Smith. I would recommend that it is for the best interests of the infant nonresident defendant, Ramona Taylor, to have the commissioner sell those lots to pay these taxes. She does not collect enough rent on the property to keep it up and pay the taxes, and it is a burden to her."

Judgment was entered directing the sale of the property as recommended by the warning order attorney. The property was appraised at $3000 and brought $2000 at the sale. In due time Ramona Taylor and her guardian filed exceptions to the sale. It is stated in the exceptions that M. G. Colson was the duly appointed, acting and qualified guardian of Ramona Taylor, an infant 15 years of age. One of the exceptions is based upon the ground that the property was assessed in the name of S. S. Taylor estate rather than against Ramona Taylor, the real owner of the property. It is set forth in another exception that no bond was executed as required by Section 410 of the Civil Code of Practice. The exceptions show also that Mrs. Ida Smith offered to execute bond guaranteeing that the property would bring as much as $3000 at another sale if the exceptions should be sustained. The court set aside the sale and

approved the bond of Mrs. Ida Smith, wherein she guaranteed that the property would bring as much as $3000 at another sale. The court refused, however, to set aside the judgment and order of sale on the alleged ground that it was void because of the failure to execute bond as required by Section 410 of the Civil Code of Practice and the listing of the property under the name of S. S. Taylor estate.

The appellants are contending that the judgment is erroneous because of the failure to execute the aforementioned bond and that it is void because of the manner in which the assessment was made.

Some question is raised as to whether Ramona Taylor was a resident or a nonresident at the time the original action was filed, and also as to the manner in which M. G. Colson was appointed guardian. It is clear from the record, however, that Ramona was residing in Ohio at the time the action was filed and a warning order attorney was appointed, and he reported that she was a nonresident. His report shows conclusively that he made a thorough examination of the case, with the view of protecting the interests of the infant. As we have noted heretofore, the exceptions show that M. G. Colson was the duly qualified and acting guardian of the infant. Both the warning order attorney and the guardian were diligent in their efforts to protect the rights of Ramona, and, while it is true no bond was executed as required by Section 410 of the Civil Code of Practice, the court still has control of the case and may, and should, take such steps as appear necessary to protect the interests of the infant before any disposition of the proceeds of the next sale is made. See Carpenter v. Julian, 180 Ky. 580, 203 S. W. 323. Section 411 of the Civil Code of Practice provides: ''If the bond mentioned in section 410 be not given, the court may enter a judgment ascertaining the rights of the parties; but shall retain control over and preserve any money or property, or the proceeds thereof, which may have been attached in the action, until the expiration of the period allowed to the defendant to appear and make defense—when, if no defense be made, such money or property or its proceeds shall be delivered according to the judgment.'' While it is true that no summons was ever served upon the infant, one was served on her guardian and she came into the case along with him when the exceptions were filed. Under

the circumstances we believe the infant's rights have been protected amply.

The manner of listing the property for taxes in cases such as the one here involved is not uncommon. The first paragraph of KRS 92.500 follows: "(1) An assessment of any real property, in a city of the fourth class, in the name of a person other than the true owner shall not be invalid, nor shall the lien of the tax be affected thereby. The assessor or collector, upon learning of the error and after notifying the true owner by mail, shall correct the assessment in this respect, and all proceedings for the collection of the tax may then proceed, subject to the right of the owner to have the valuation corrected at a meeting of the board of supervisors to be called for that purpose." While it is doubtful whether this statute was designed to cover a case such as the one before us, we fail to see how it can be contended seriously that the judgment was void because of the nature of the assessment, even if it be assumed that the statute applies here. The purpose of the statute is to acquaint the owner of the property with the assessment and give him an opportunity to question it. Certainly this proceeding was sufficient to give the real owner of the property and her guardian notice of the assessment. Both parties appeared in the case before final judgment was entered, and at no time was question raised concerning the validity or correctness of the assessment. We do not think the appellants can now be heard to say that the judgment is void because of the manner in which the assessor listed the property for taxes.

Under the circumstances, we think the judgment should be and it is affirmed.