## Eads et al. v. Brinegar et al.

December 19, 1947.
As modified February 20, 1948.

▬▬▬▬▬▬▬▬

Chester D. Adams, Judge.

▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬

344

Wheeler Boone and Sam P. Strother for appellants.

Nolan Carter for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Clarence Richard Steele died intestate July 12, 1936, leaving surviving him his widow, Edith Steele, and five infant children. He owned at the time of his death a house and lot in Lexington and less than $300 in personal property. The widow qualified as administratrix of the estate of her deceased husband, and paid the claims against the estate which exceeded by several hundred dollars the proceeds of the deceased's personal property, the excess being paid by the administratrix out of her personal funds. Some time prior to 1941 Edith Steele married James Price, but she and her children continued to occupy the house left by her first husband. On February 17, 1941, Edith Price, as administratrix of the estate of Clarence Richard Steele, brought an action in the Fayette Circuit Court for the settlement of her deceased husband's estate. She asked that the case be referred to the Master Commissioner of the Fayette Circuit Court to ascertain and report the amount of debts against the estate, to make a settlement with her as administratrix, and to reimburse her out of the estate for all debts paid by her. She asked for a sale of the house and lot. The five children of the deceased and the spouses of those who had married were made defendants. At the time the suit was instituted one of the children was over twenty-one years of age and the remaining four were infants, three over fourteen years of age and one under fourteen. Summons was duly executed by delivery of a copy to each of the defendants and to the guardian ad litem of the infant defendant under fourteen years of age, and the guardian ad litem appointed to defend for all of the infants filed an answer stating that after a careful examination of the case he was unable to make a defense. The Master Commissioner reported that Edith Price, administratrix of the estate of her deceased husband, had received $295.75 and paid claims against the estate amounting to $1,179.69, leaving the estate indebted to her in the sum of $883.94. He reported that in order to settle the estate it was necessary

to sell the house and lot. A judgment and order of sale was entered on May 10, 1941, directing the Master Commissioner to sell the property on May 19, 1941, at public outcry to the highest and best bidder. The property was appraised at $750, and Edith Price, the administratrix, was the highest bidder at $650. The court confirmed the report of sale and by deed dated May 31, 1941, the Master Commissioner conveyed the house and lot to Edith Price. She remained in possession of the property until July 6, 1944, when she sold and conveyed it to Verda Mae Eads for $1,400 cash.

Clarence Franklin Steele, one of the children of Clarence Richard Steele, died intestate and unmarried in 1943, and his one-fifth interest in his father's estate was inherited by his mother, Edith Price. On September 12, 1945, two of the surviving children, Amos Richard Steele and John Ballard Steele, instituted a proceeding under section 518, subsection 8, and section 391 of the Civil Code of Practice to vacate the judgment and order of sale of May 10, 1941, and to set aside the sale held on May 19, 1941, and the order confirming the sale entered on May 31, 1941, on the ground that the plaintiff in the settlement suit, Edith Price, became the purchaser of the property while she was acting as the administratrix of the estate of her deceased husband and the judgment therefore was erroneous and voidable at the election of the infant defendants. They also prayed that John Ballard Steele be adjudged a homestead in the property, but this prayer was withdrawn later when it appeared that he was married. At the time this proceeding was filed Amos Richard Steele was twenty-one years of age, having reached his majority on May 5, 1945, and John Ballard Steele was eighteen years of age. On January 5, 1946, the court sustained the motion to vacate the judgment of May 10, 1941, and to set aside the sale and the order confirming same. Verda Mae Eads, who had purchased the property from Edith Price on July 6, 1944, was not a party to the proceeding when this order was entered. On January 26, 1946, Elizabeth Steele Brinegar and Bessie Steele Hatfield, the remaining two surviving children who were twenty-six and twenty-three years of age, respectively, filed an answer, counterclaim and cross-petition. They alleged that by reason of the order of January 5, 1946,

they owned a one-fifth interest each in the property, and asked that it be sold and the proceeds divided among the joint owners. They made Verda Mae Eads and her husband defendants. Mr. and Mrs. Eads filed a demurrer to the pleading and also a motion to set aside the order entered January 5, 1946, vacating the judgment in the original proceeding. The demurrer and the motion were overruled. Mrs. Eads then filed an answer in which she alleged that she was a bona fide purchaser of the property. A reply was filed by the children of Clarence Steele, deceased. On June 29, 1946, the court adjudged that Verda Mae Eads and the four surviving children of Clarence Richard Steele each owned an undivided one-fifth interest in the property, and it was ordered sold. Verda Mae Eads has appealed from that judgment.

Several questions as to the propriety of the judgment are posed, but we need consider only one: Was appellant a bona fide purchaser? If that question is answered in the affirmative the judgment is erroneous in that a resale of the property was ordered. Section 518, subsection 8, of the Civil Code of Practice reads: "The court in which a judgment has been rendered shall have power, after the expiration of the term, to vacate or modify it— * * * For errors in a judgment, shown by an infant within twelve months after arriving at full age, as is prescribed in section 391."

Section 391 reads: "An infant—other than a married woman—may, within twelve months after attaining the age of twenty-one years, show cause against a judgment, unless it be for a tort done by, or for necessaries furnished to, the infant; or unless it be rendered upon a set-off or counterclaim stated in an answer; but the vacation of such judgment shall not affect the title of a bona fide purchaser under it."

Edith Price, who purchased the property at the decretal sale while she was acting as administratrix of her husband's estate, was not a bona fide purchaser, but the sale to her was not void. It was voidable at the election of the owners of the property. Malone's Guardian Ad Litem v. Malone, 255 Ky. 210, 73 S. W. 2d 38; Ballman v. Ballman, 252 Ky. 332, 67 S. W. 2d 39; Robson's Guardian v. Robson, 213 Ky. 625, 281 S. W. 789;

Davis v. Bush, 198 Ky. 558, 249 S. W. 327. In Grooms v. Grooms, 225 Ky. 228, 7 S. W. 2d 863, 865, the court said: "If property is purchased at a judicial sale by a personal representative who is a party to the action, the sale is not void, if confirmed by the court, but voidable at the election of the beneficiaries of the decedent." We have held, however, in a long line of decisions that one, such as appellant, who in good faith has purchased real estate from a fiduciary whose deed is voidable, as in the present case, is a bona fide purchaser. In Harris v. Hopkins, 166 Ky. 147, 179 S. W. 14, 15, a guardian purchased his wards' land at a decretal sale and later conveyed it to one Hopkins. Several years after reaching their majority the infants asserted a claim to the land, and Hopkins brought an action against them to quiet his title. The court held that the sale to the guardian was voidable and not void, and the infants' remedy was to appeal from the judgment within one year after the removal of the disability or within that time to take steps under sections 518 and 391 of the Civil Code of Practice in the court rendering the judgment to have it vacated or modified. In the course of the opinion it was said: "Neither does the fact that the guardian was the purchaser void the sale. At most it was voidable at the option of the infants. When it appears that the sale was reported, and the bonds executed and approved, and the sale confirmed by the court, it stands as a valid sale until it is set aside or vacated after steps taken in the manner already referred to, and even then the title of Hopkins and his vendees would not be affected, unless it be made to appear that they were not bona fide purchasers. Civil Code of Practice, sec. 391."

The following from Clements v. Ramsey, 4 S. W. 311, 313, 9 Ky. Law Rep. 172, 174, was quoted: " 'The purchase was made by the guardian in his own right. Having been made by the guardian, the chancellor could have refused to confirm the sale. He saw proper to confirm it and directed a deed made to him by the commissioner. That deed invested him with title, and where he sold to a third party, the latter held it against the infant and all others claiming under him. The sale was not void.' "

To the same effect are Morrisson v. Garrott, 22

S. W. 320, 15 Ky. Law Rep. 305; Dennis v. Alves, 132 Ky. 345, 113 S. W. 483, rehearing denied, 117 S. W. 287; Webb v. Webb's Guardian, 178 Ky. 152, 198 S. W. 736; City of Owensboro v. Hardwick, 232 Ky. 751, 24 S. W. 2d 555; Ohio Oil Company v. West, 284 Ky. 796, 145 S. W. 2d 1035; Hume v. Chenault, 305 Ky. 68, 202 S. W. 2d 1018, 1021.

It is not contended that the amount paid by Edith Price at the judicial sale in 1941 was not the fair and reasonable value of the property at that time. Likewise the appellant Verda Mae Eads paid full value for the property when she purchased it from Edith Price in 1944. There is no claim of collusion or fraud.

We conclude that appellant was a bona fide purchaser of the property in question, and that the court erred in voiding the sale as to her. What appellees' remedial rights against Edith Price may be we need not determine, since she is not a party to this appeal. This is another illustration of the fact that a great increase in real estate values following decretal sales is a breeder of litigation.

The judgment is reversed with directions to enter one in conformity herewith.